**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**


**MOHAMMED KAMAL,**
**ALIEN # A096-012-028,**

      **Petitioner,**

**vs.**                                           **Case No. 4:09cv443-RH/WCS**

**ERIC H. HOLDER, JR.,**
**ATTORNEY GENERAL OF THE**
**UNITED STATES, et al.,**

      **Respondents.**

_____/


## REPORT AND RECOMMENDATION

Petitioner, proceeding *pro se*, filed a petition for a § 2241 writ of habeas corpus on November 17, 2009. Doc. 1. Petitioner, a native of Bangladesh, states he is housed at the Wakulla County Jail in Crawfordville, Florida, and has been in detention for some thirteen months awaiting removal, having entered immigration custody initially on October 16, 2008. *Id.*, at 1. Petitioner contends that Respondents are unable to effect his removal, yet refuse to release him. *Id.*, at 2. Petitioner is not challenging the validity of the removal order, only his indefinite detention under <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001). *Id., at 2.

Finding the petition sufficient, Respondents[1] were ordered to file an answer or other appropriate pleading to the petition. Doc. 5. Respondents filed an Answer on February 16, 2010, doc. 15, and Petitioner filed his Reply, doc. 16, on March 9, 2010.

**The Answer, doc. 15**

Respondents assert that Petitioner's detention is lawful and claim Petitioner "has failed to establish his detention by ICE is unlawful." Doc. 15, pp. 3-4. Respondents contend § 241(a)(6) of the INA permits detention of Petitioner because he is removable "due to his unlawful status in the United States," and further contend that Petitioner has made only "an uncorroborated claim" that ICE will not be able to remove him. *Id.*, at 4, 7. Respondents assert that Petitioner was scheduled for "a removal flight back to Bangladesh on December 10, 2008." *Id.*, at 7. The flight was cancelled pending a ruling by the Immigration Judge on Petitioner's motion to reopen. *Id.* That motion was denied on January 22, 2009. *Id.* Respondents assert that ICE is now "waiting for the Bangladeshi government to complete their investigation and verification process of the petitioner." *Id.* Petitioner has allegedly refused to complete certain forms, including a new passport application, and thus, Respondents contend that Petitioner has delayed his removal. *Id.*, at 7. Respondents argue that the petition should be denied because Petitioner has failed to show "good reason to believe that there is no significant likelihood of accomplishing removal in the reasonably foreseeable future." *Id.* They assert that diplomatic relations are maintained between the United States and

---

[1] Respondents in this case are the United States Attorney General ERIC H. HOLDER, JR., the Secretary of Homeland Security JANET NAPOLITANO, the Field Office Director for Detention and Removal, United States Immigration Customs Enforcement MICHAEL ROZOS, and the Sheriff of Wakulla County, Florida DAVID HARVEY.

Bangladesh. Doc. 15, p. 7. During the year 2008, the last year for which statistics are available, "approximately 108 people" were removed to Bangladesh. *Id.*, at 7-8.

**The Reply, doc. 16**

Petitioner contends he has cooperated with ICE officials and assisted in removal efforts. Doc. 16, p. 4. He suggests that Bangladesh will "not issue him a travel document because of the multiple times that [Petitioner] tried to contact them and get them to issue him one . . . . *Id.*, at 5. Petitioner says the embassy "mentioned that they might not issue a travel document." *Id.*

**Background Facts**

Petitioner was born in Bangladesh on April 10, 1969. Doc. 15-1 (Mersereau affidavit). Petitioner was admitted into the United States on August 3, 1999, in Newark, New Jersey "as a non-immigrant visitor." *Id.* He was authorized to remain in the United States until November 2, 1999, but Petitioner did not depart. *Id.* Petitioner married a United Citizen at some unspecified time. Doc. 16, p. 1.

Petitioner was "convicted on April 13, 2005, of Dealing in Stolen Property." Doc. 15-1, p. 1. Petitioner was also convicted on March 6, 2006, of Theft and Larceny. *Id.*

On March 2, 2004, prior to both convictions, Petitioner was ordered removed from the United States. Doc. 15-1, p. 1. The removal order was entered *in absentia* as Petitioner "failed to appear for his scheduled hearing." *Id.*

Petitioner was "apprehended at his residence" on October 16, 2008. Doc. 15-1, p. 1. Petitioner's "valid Bangladesh passport was found at the residence." *Id.* He was scheduled to be removed to Bangladesh on December 10, 2008. *Id.* On December 4, 2008, however, Petitioner filed "a Motion to Reopen with the Immigration Judge." *Id.*, at

2. That filing "triggered an automatic stay" of Petitioner's scheduled removal. *Id.* Just over a month later, on January 22, 2009, the Motion to Reopen was denied. *Id.*

The following month, on February 25, 2009, Petitioner "was turned over to Broward County authorities on an outstanding criminal warrant." Doc. 15-1, p. 2. Petitioner was returned to the custody of ICE on May 6, 2009. *Id.*

ICE did not submit a "new travel document request to the Embassy of Bangladesh" until two months later, on July 15, 2009. Doc. 15-1, p. 2. A 90-day Post Order Custody Review was completed on July 30, 2009, continuing Petitioner's detention. *Id.* A 180-day Post Order Custody Review was completed on November 24, 2009, to continue his detention. *Id.* Most recently, on February 3, 2010, the 270-day Post Order Custody Review resulted in a third decision to continue Petitioner's custody. *Id.* Respondents assert that "[t]he Bangladesh Embassy appears to be ready to issue a travel document for the Petitioner with the submission of the original passport and a completed passport application to them." Doc. 15-1, p. 2.

ICE issued Petitioner a Form I-229(a) on January 28, 2010, which advised Petitioner that "his failure to make an application in good faith for a travel document" would extend the removal period. Doc. 15-1, p. 2. Respondents submitted the affidavit of Deportation Officer Nadine Mersereau who states Petitioner "refused to complete the Bangladesh passport application on February 5, 2010, and February 9, 2010." *Id.*, at 2.

Petitioner has presented an application for passport for the Embassy of the People's Republic of Bangladesh. Doc. 16-1, p. 14. The date of Plaintiff's signature on the application is February 24, 2010. *Id.*, at 15. Petitioner indicates in his reply that when the deportation officer first requested that he complete the Bangladesh passport

application on February 5, 2010, he asked for a translation for the document "because it was written in English which he could not understand . . . ." Doc. 16, p. 3. Petitioner had the assistance of another detainee who helped him complete the application. *Id.*, at 4.

**Analysis**

This Court has jurisdiction over this § 2241 habeas petition as Petitioner is not challenging a final order of removal, but only seeking release from what he asserts is an unlawful and indefinite period of detention pursuant to <u>Zadvydas v. Davis</u>, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). In <u>Zadvydas</u>, the United States Supreme Court considered a challenge to 8 U.S.C. § 1231(a)(6) and was asked to decide whether the statute authorized indefinite detention of a removable alien.[2] The Court held that the continued detention of legal permanent aliens beyond the mandated 90-day removal period was permissible under the Constitution, but only for as long as was "reasonably necessary to bring about that alien's removal from the United States." *Id.*, at 689, 121 S. Ct. at 2498. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.,* at 699, 121 S.Ct. at 2503. For the sake of uniformity, the <u>Zadvydas</u> Court held that "the presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months; after that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.' " <u>Clark v. Martinez</u>, 543 U.S. 371, 125 S.Ct. 716, 722, 160 L.Ed.2d 734 (2005), *quoting*

---

[2] Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States. 8 U.S.C. § 1231(a)(1)(A).

Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505.  Furthermore, in Clark v. Martinez, *supra*, the Court extended its interpretation of 8 U.S.C. § 1231(a)(6) to inadmissible aliens.[3] The period of time reasonably necessary to effect removal should not be any longer for an inadmissible alien than for an admissible alien.  Clark, 543 U.S. at 386, 125 S.Ct. at 727.

Accordingly, under Clark and Zadvydas, when an alien shows that he has been held more than six months beyond the removal period and his removal is not reasonably foreseeable, a § 2241 petition should be granted.  Clark, 543 U.S. at 386-387, 125 S.Ct. at 727; Benitez v. Wallis, 402 F.3d 1133, 1135 (11th Cir. 2005) (relying on Clark to hold that "an inadmissible alien can no longer be detained beyond the statutory 90-day removal period of § 1231(a)(1), where there was no significant likelihood of removal in the reasonable foreseeable future.").[4]

Zadvydas established a burden-shifting analysis and, after the presumptive six month removal period has expired, an alien must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505.  Thereafter, "the Government must respond with evidence sufficient to rebut that showing."  *Id.*  The Court noted:

---

[3] The relevant statute provides: "An alien ordered removed who is inadmissible under section 1182 of this title, removable [for violations of nonimmigrant status or entry conditions, violations of criminal laws, or threatening national security] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."  8 U.S.C. § 1231(a)(6), *quoted in* Benitez v. Wallis, 402 F.3d 1133, 1134 (11th Cir. 2005).

[4] An alien must be detained during the "removal period."  8 U.S.C. § 1231(a)(2).

And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*, at 701, 121 S.Ct. at 2505.

In this case, Petitioner met his initial burden under <u>Zadvydas</u> because he alleged that his removal order had been final for more than five years, that he had been held in custody for than a year, and that Respondents "refuse to release him even though they are unable to deport him and will not be able to deport him in the reasonably foreseeable future." Doc. 1, pp. 1-2. Thus, the burden shifts to Respondents to rebut that showing and demonstrate there is a significant likelihood of removal in the reasonably foreseeable future.

Respondents have shown that in December of 2008, Petitioner "was scheduled to be removed to Bangladesh . . . ." Doc. 15-1, p. 1. Petitioner's motion to reopen and stay removal caused an "automatic stay." *Id.*, at 2. After Petitioner was returned to the custody of ICE, a request for a new travel document was made on or about July 15, 2009. *Id.* The Bangladeshi Embassy "appears to be ready to issue a travel document for the Petitioner with the submission of the original passport and a completed passport application . . . ." *Id.* The original passport was taken when Petitioner was arrested and in February, 2010, Petitioner completed the passport application. Respondents have shown that a month ago, Petitioner refused to complete the Bangladesh passport application. Doc. 15-1, p. 2. Finally, Respondents have shown that diplomatic relations

are maintained with Bangladesh, and in 2008, over one hundred people were removed to Bangladesh.  Doc. 15, p. 7.

Thus, at one point just over a year ago, Petitioner was about to be removed.  The removal was cancelled due to the pending motion Petitioner filed to the Immigration Judge.  When the motion was denied and Petitioner returned to custody, it is not clear from this record why it took two months to request travel documents.  Nor is it clear what happened between July, 2009, when that request was made, and the six months it took to request that Petitioner complete a passport application.  At any rate, despite that delay, it now appears that all is in place to secure the travel documents and have Petitioner returned to Bangladesh.

In response, Petitioner has not shown that his detention is indefinite or that "there is no significant likelihood of removal in the reasonably foreseeable future."  Petitioner has now signed the passport application.  Doc. 16, p. 4.  Petitioner has a country to which he can be removed and that removal can be carried out since he has signed the passport application and ICE has his original passport.  On this record, those were the only two hindrances to removal and they are no longer in issue.  It appears that Petitioner can now be removed in the *reasonably foreseeable* future and, thus, the petition must be denied without prejudice.  Should Petitioner *not* be removed within a reasonable period of time, a renewed petition would be in order.  On these facts, however the petition should be denied.

Accordingly, it is **RECOMMENDED** that the petition for a writ of habeas corpus,

doc. 1, filed by **Mohammed Kamal, Alien # A096-012-028**, be **DENIED** without

prejudice.

**IN CHAMBERS** at Tallahassee, Florida, on March 26, 2010.


s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and
recommendations within 15 days after being served with a copy of this report and
recommendation.  A party may respond to another party's objections within 10
days after being served with a copy thereof.  Failure to file specific objections
limits the scope of review of proposed factual findings and recommendations.